Benjamin C. Allenby and Ila Mae Allenby v. Commissioner.
Allenby v. Commissioner
Docket No. 58111.
United States Tax Court
T.C. Memo 1957-207; 1957 Tax Ct. Memo LEXIS 43; 16 T.C.M. (CCH) 937; T.C.M. (RIA) 57207; October 31, 1957
*43 Morris M. Grupp, Esq., and Leon Schiller, Esq., for the petitioners. Leslie T. Jones, Jr., Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent determined a deficiency of $383.94 in the petitioners' income tax for 1951. Issues presented by the pleadings are the correctness of the respondent's action (1) in disallowing a deduction of $382.50 taken as a long-term capital loss sustained on the sale of an automobile, (2) in disallowing a deduction of $422.65 taken for chain saw repairs, (3) in disallowing a portion of a deduction of $498 taken for depreciation on an automobile, and (4) in disallowing a deduction of $931 taken as other expenses. At the hearing the petitioners conceded the correctness of the respondent's action as to Issue 1 and on brief the respondent concedes that the deduction involved in Issue 2 was properly taken. This leaves for determination only Issues 3 and 4. Findings of Fact Some of the facts have been stipulated and are found accordingly. The petitioners are, and during 1951 were, husband and wife with residence at Fort Bragg, California. They filed their joint Federal income tax return *44 for 1951 with the collector for the first district of California. The petitioners have no children. Since petitioner Ila Mae Allenby is joined here only by virtue of such joint return, the term "petitioner" will hereinafter be used with reference to Benjamin C. Allenby. Throughout 1951 the petitioner was employed as a "chopper" by Daniels & Ross, by whom he had been employed since July 1947. In his employment as a "chopper" the petitioner was engaged in "falling" or cutting or sawing down trees and sawing them into logs at a stated amount per thousand board feet of logs. The petitioner provided certain equipment which he used in his employment. This consisted of a chain saw, 2 bars and 2 chains for the saw, gasoline and oil cans, a springboard, a gun stick, 2 axes, 2 sledge hammers, shims and plates, 12 wedges, and minor tools and spare parts for on-the-job-repairs. At the end of a day's work the petitioner would take with him his gasoline and oil cans and any tools or parts of tools that were broken and in need of repair or sharpening. Spare tools, such as spare sledge hammer, spare axe, and spare wedges, ordinarily would not be removed from his automobile and consequently were *45 transported back and forth daily. The chain saw and other equipment ordinarily would be left overnight at the "layout" or particular place in the woods where the petitioner was working. Throughout 1951 the petitioner was employed in woods of Daniels & Ross in the vicinity of Redwood Creek, California, in which vicinity he had continued to work since entering that firm's employment in 1947. The "layouts" at which petitioner worked in 1951 were about 30 miles from his home at Fort Bragg. During the summer months and the dry season of the year the petitioner went by automobile from his home to the "layouts" where he worked and returned to his home at the end of the day's work. During the remainder of the year, which comprised about 6 months and included the winter months and the wet season, rains rendered impassable a portion of the road between petitioner's home and the "layouts" where he worked. During this portion of the year the petitioner slept 5 nights a week in a one-room shack, which he rented from his employer by the year at a rental of $10 monthly. Because of its primitive character the shack was not suitable for occupancy by petitioner's wife. In addition to sleeping in the *46 shack the petitioner prepared his meals and ate there. The meals were prepared on a hot plate, owned by petitioner, and heated with butane gas which he provided. The "layouts" at which the petitioner worked in 1951 while using the shack were from 1 to 4 miles away from the shack and he used his automobile to travel between it and them. During this portion of the year the petitioner worked 5 days a week. He returned to his home at Fort Bragg for the week ends, taking a train at Redwood Creek about 2:30 o'clock Saturday afternoon for Fort Bragg and taking a train about 10 o'clock Monday morning at Fort Bragg for Redwood Creek where he arrived about noon. Over the week ends the petitioner left his automobile at Redwood Creek which was about 4 miles from the shack that he used. During the period that petitioner used the shack his wife continued to live in their home at Fort Bragg. During 1951 living accommodations for the petitioner and his wife were not available at any place nearer to the "layouts" where he worked than Fort Bragg. The only public transportation available between Fort Bragg and Redwood Creek was a daily train, the schedule of which was such as to permit one using it *47 to spend only about 2 1/2 hours a day in the Redwood Creek area. During the portion of 1951 that the petitioner used his automobile to travel between his home and the "layouts" where he worked, he used it on week ends for getting groceries, for attending church and for other similar personal purposes. The automobile used by the petitioner in 1951 was a 1948 model Chevrolet which he had acquired in July 1950 at a cost of $1,495. During 1951 the petitioner did not rent his chain saw or any other of his equipment to any one. In "Schedule F. - Income From Rents and Royalties" of their income tax return for 1951, the petitioners reported a loss of $787.09, which they deducted in computing their taxable income for that year. In this schedule an amount of $1,064.56 was shown as income received from "Chain Saw Rental." From that amount the petitioners deducted certain items, including the following, as attributable to rental in computing the above-mentioned amount of $787.09: Depreciation on automobile
$498.00
Other expenses
931.00 The item of other expenses was explained on the return as follows: License and taxes
$ 17.00
Insurance
89.00
Maintenance of home
825.00
*48 The item of maintenance of home was explained as follows: "Away from home - permanent home Fort Bragg Temporary Home Redwood Creek." In determining the deficiency here involved the respondent determined that 20 per cent of the use of the petitioner's automobile was for business purposes and that the remainder of its use was for personal purposes. Accordingly, he allowed $99.60 of the deduction of $498 taken for depreciation on the automobile and disallowed the remainder. As to the deduction taken for other expenses, the respondent determined that the amount of $825 shown as taken for maintenance of home was a personal expense and disallowed it. He further determined that the foregoing disallowance reduced the amount of itemized deductions allowable to an amount which was less than the amount of the standard deduction allowable to petitioners and accordingly disallowed the remaining items taken for license and taxes and for insurance. With respect to his automobile, the petitioner during 1951 paid $17 for license and taxes and $89 for casualty insurance. The amount of $825 taken for "Maintenance of home" consisted of $120 representing the rent paid by petitioner in 1951 for the *49 shack for that year and $705 representing the petitioner's estimate of the amount he had paid in 1951 for his food, the butane gas used and incidentals while using the shack in 1951. Deductible depreciation of the petitioner's automobile sustained as a result of its use in the petitioner's trade or business during 1951 was $249. Of the deductions taken for license and taxes and for insurance, the amounts of $8.50 and $44.50, respectively, represented ordinary and necessary expenses of the petitioner's business or trade. Opinion The petitioners take the position that in the situation here presented it was necessary for petitioner Benjamin C. Allenby to use automotive equipment to travel between his home at Fort Bragg and the "layouts" at which he worked for part of 1951 and to travel between the shack in the vicinity of Redwood Creek and the "layouts" at which he worked for the remainder of 1951, that the use of his automobile for such purpose constituted its use in his business or trade and caused the depreciation of, the cost of the casualty insurance on, and the license and taxes paid with respect to, the automobile to be deductible as ordinary and necessary business expenses. *50 The evidence shows that petitioner's use of the automobile to travel between his home at Fort Bragg and the "layouts" and between the shack and the "layouts" was for a dual purpose, namely, for commuting between his home and the "layouts" and commuting between the shack and the "layouts" and for transporting tools and equipment used by him in his employment. In Charles Crowther, 28 T.C. - (Sept. 30, 1957), the taxpayer was engaged in like employment as the petitioner here and used his automobile to travel or commute between his home and the "layouts" where he worked and to transport tools and equipment used by him in his employment. In that case it was pointed out that it has long been held that commuting expenses are personal expenses and are not deductible as business expenses. It also was there held that the rule was the same regardless of the distance commuted and even though public transportation was not available and living accommodations for the taxpayer and his family were not available at or near the place of his employment. In allowing a portion of the deduction taken for depreciation, the respondent has recognized, and we think properly so, that the automobile, in *51 addition to being used by petitioner to commute to the various "layouts" at which he worked, also was used by him in his business or trade. In our opinion the record warrants the allowance for such use of a larger amount for depreciation than was allowed by respondent. Accordingly, we have found that deductible depreciation in the amount of $249 was sustained in 1951 with respect to the automobile. The respondent disallowed the deductions taken for casualty insurance on and for license and taxes paid with respect to the automobile. From the record we have concluded and found that the amounts of $8.50 and $44.50 paid for license and taxes and for insurance, respectively, represented ordinary and necessary expenses of petitioner's business or trade. The remaining issue involves the respondent's disallowance of the deduction of $825 taken on account of petitioner's outlays for rent for the year 1951, and for food, butane gas and incidentals while he was using the shack during that year. The petitioners contend that since Allenby was unable, because of the impassable condition of the road, to travel between his home and the "layouts" where he worked during the time he used the shack, *52 the $825 constituted expenses incurred by him while away from home in the pursuit of his business or trade and were deductible under the provisions of section 23(a)(1)(A) of the Internal Revenue Code of 1939, pertinent portions of which are set out below. [1] The respondent contends that his disallowance of the deduction was proper. Although the parties have cited and discussed a number of cases on brief, we think it necessary to discuss only one of them, namely, Commissioner v. Flowers, 326 U.S. 465. In the Flowers case, the taxpayer, a lawyer, was employed by a railroad which had its main office in Mobile, Alabama. The taxpayer resided with his family in Jackson, Mississippi, where he had resided for many *53 years. The taxpayer was employed under an arrangement by which he could continue to reside in Jackson on the condition that he pay his traveling expenses between Mobile and Jackson and pay his living expenses in both places. The arrangement permitted the taxpayer to determine for himself the amount of time he would spend in each of the two cities. The railroad provided him an office in Mobile but he provided his own office in Jackson. The taxpayer's principal post of business was at the main office of the railroad in Mobile. During the taxable years 1939 and 1940 he spent the greater part of his time in Jackson. He deducted $900 in his income tax return for 1939 and $1,620 in his return for 1940 as traveling expenses incurred in making trips from Jackson to Mobile and as expenditures for meals and hotel accommodations while in Mobile. In holding that the deductions in question were not allowable under section 23(a)(1)(A) of the 1939 Code, the Supreme Court said: "Three conditions must thus be satisfied before a traveling expense deduction may be made under § 23(a)(1)(A): "(1) The expense must be a reasonable and necessary traveling expense, as that term is generally understood. *54 This includes such items as transportation fares and food and lodging expenses incurred while traveling. "(2) The expense must be incurred 'while away from home.' "(3) The expense must be incurred in pursuit of business. This means that there must be a direct connection between the expenditure and the carrying on of the trade or business of the taxpayer or of his employer. Moreover, such an expenditure must be necessary or appropriate to the development and pursuit of the business or trade. * * *
"Failure to satisfy any one of the three conditions destroys the traveling expense deduction. * * *
"The facts demonstrate clearly that the expenses were not incurred in the pursuit of the business of the taxpayer's employer, the railroad. Jackson was his regular home. Had his post of duty been in that city the cost of maintaining his home there and of commuting or driving to work concededly would be non-deductible living and personal expenses lacking the necessary direct relation to the prosecution of the business. The character of such expenses is unaltered by the circumstance that the taxpayer's post of duty was in Mobile, thereby increasing the costs of transportation, *55 food and lodging. Whether he maintained one abode or two, whether he traveled three blocks or three hundred miles to work, the nature of these expenditures remained the same. "The added costs in issue, moreover, were as unnecessary and inappropriate to the development of the railroad's business as were his personal and living costs in Jackson. They were incurred solely as the results of the taxpayer's desire to maintain a home in Jackson while working in Mobile, a factor irrelevant to the maintenance and prosecution of the railroad's legal business. * * * "Travel expenses in pursuit of business within the meaning of § 23(a)(1)(A) could arise only when the railroad's business forced the taxpayer to travel and to live temporarily at some place other than Mobile, thereby advancing the interests of the railroad. Business trips are to be identified in relation to business demands and the traveler's business headquarters. The exigencies of business rather than the personal conveniences and necessities of the traveler must be the motivating factors. Such was not the case here." * * *
From the foregoing we think the Supreme Court has made it clear that for travel expenses of an *56 employee in pursuit of business or trade to come within the meaning of section 23(a)(1)(A) of the 1939 Code, they must arise from the fact that the exigencies of the employer's business require the employee to travel or to live temporarily at some place or places other than his business headquarters or post of duty in advancing the interests of the employer. We further think that the Court has made it clear that travel expenses of an employee do not come within the meaning of that section where the motivating factors for their incurrence were the personal conveniences and necessities of the employee. The record does not show that the petitioner's employer required that during 1951 the petitioner reside at any particular place or places or that it called upon, or required, him to render service to it at any place except the "layouts" in the employer's woods in the vicinity of Redwood Creek in which vicinity he had continued to work for the same employer since July 1947. Under the holding in the Flowers case the petitioner's business headquarters or post of duty was the employer's woods in the vicinity of Redwood Creek. The petitioner's use of the shack during the winter months and *57 the wet season did not result from any exigencies of the business of his employer but was motivated by the necessity of the petitioner for staying at a place from which he could readily and conveniently travel to his work. In view of what has been said above and since it does not appear that the petitioner's business headquarters or post of duty and the character of his employment were any different during one portion of the taxable year from what they were during the remainder of the year, we sustain the respondent's actions as to this issue. Cf. Henry C. Warren, 13 T.C. 205; Willard S. Jones, 13 T.C. 880. In their petition, the petitioners have assigned certain errors and made certain allegations of fact, all of which the respondent denied in his answer, and on brief have advanced certain contentions challenging the propriety of the administrative policy and procedures employed by the respondent prior to his determination of the deficiency here involved and challenging the propriety of his motives in making such determination. We have jurisdiction to consider and determine, and have considered and determined in the light of the evidence of record, the *58 correctness of the respondent's determination of the deficiency here involved. However, we are without jurisdiction to consider and determine the propriety of the administrative policy and procedures the respondent employed prior to making such determination or to consider and determine the propriety of his motives in making such determination. Charles Crowther, supra. Decision will be entered under Rule 50. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses. - (1) Trade or Business Expenses. - (A) In General. - All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * * traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; * * *↩